**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Paulo H.R., | Case No. 8:20-cv-01070-PD |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER AFFIRMING ALJ'S DECISION** |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

I.    **SUMMARY OF RULING**

Plaintiff challenges the denial of his applications for Social Security Disability Insurance Benefits and Supplemental Security Income.[1] The Court concludes that the Administrative Law Judge stated adequate reasons for discounting Plaintiff's symptom testimony and for assigning little weight to

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, the current Acting Commissioner of the Social Security Administration, is hereby substituted in as the Defendant.

the treating physician's opinion.  For these reasons, the Court affirms the agency's decision.

## II.     PROCEEDINGS BELOW

On December 8, 2016, Plaintiff filed an application for social security disability insurance benefits alleging disability since March 15, 2011. [Administrative Record ("AR") AR 171-74; Joint Stipulation ("JS") 2.][2] Plaintiff's applications were denied administratively on April 13, 2017, and upon reconsideration on June 13, 2017.  [AR 98-102, 104-09.]  Plaintiff requested a hearing, which was held on July 21, 2017, before an Administrative Law Judge ("ALJ").  Plaintiff appeared without counsel and testified through an interpreter.  A vocational expert also testified.  [AR 42.]

On March 18, 2019, the ALJ issued a decision finding that Plaintiff was not disabled.  [AR 20-41.]  The Appeals Council denied Plaintiff's request for review on April 20, 2020, rendering the ALJ's decision the final decision of the Commissioner.  [AR 1-5.]

The ALJ followed the requisite five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. § 416.920(a).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2011, the alleged onset date.  [AR 28.]  At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbar spine degenerative disc disease (DDD) and right knee internal derangement." [AR 29 ¶ 3.]  At step three, the ALJ found that Plaintiff does "not have an impairment or combination of impairments that meets or medically equals the

---

[2] The Administrative Record is CM/ECF Docket Numbers 16 through 16-9 and the Joint Stipulation is Docket Number 20.

2

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [AR 30 ¶ 4.]

Before proceeding to step four, the ALJ determined that Plaintiff has the Residual Functional Capacity ("RFC") to perform light work with the following limitations:

> [L]ift, carry, push, or pull up to 20 pounds occasionally, 10 pounds frequently; stand/walk for four hours out of an eight-hour day; sit for six hours out of an eight-hour day; occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and is limited to occasional exposure to hazards such as moving mechanical parts and unprotected heights.

[AR 30 ¶ 5.][3] Based on this RFC and the testimony of a vocational expert, the ALJ found that Plaintiff could not perform his past relevant work as a production machine operator, but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [AR 35-36.] The ALJ concluded that Plaintiff was not disabled. [AR 37.]

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits. A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979

---

[3] The regulations define light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

3

F.3d 751, 755 (9th Cir. 2020) (citations omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (same).

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path is reasonably discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

## IV. DISCUSSION

### A. The ALJ did not err in rejecting Plaintiff's subjective symptom testimony

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons for rejecting his testimony regarding his impairments, symptoms, and resulting limitations in assessing the RFC. [JS 7-11.]

#### 1. Relevant Law

In the absence of proof of malingering, an ALJ may reject a litigant's believability by identifying "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). An ALJ may consider a variety of factors in analyzing the believability of a claimant's symptom testimony, including "ordinary techniques of

4

credibility evaluation." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Evans v. Berryhill*, 759 F. App'x 606, 608 (9th Cir. 2019) (same).

Inconsistent daily activities "may provide a justification for rejecting symptom testimony," but "the mere fact that a plaintiff has carried on certain daily activities [ ] does not in any way detract from her credibility as to her overall disability." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (citation and quotations omitted). Even when a claimant's activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Wennet v. Saul*, 777 F. App'x 875, 877 (9th Cir. 2019) (citing *Molina*).

An ALJ may also consider whether there is a lack of objective medical evidence supporting a claimant's allegations. However, this factor "cannot form the sole basis" for discounting subjective symptom testimony. *Burch*, 400 F.3d at 681; *Davis v. Berryhill*, 736 F. App'x 662, 665 (9th Cir. 2018).

Even if an ALJ impermissibly relies "on one of several reasons in support of an adverse credibility determination," the error is harmless if "the ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citation and emphasis omitted).

### 2. Plaintiff's Subjective Symptom Testimony

#### a. Hearing testimony

At the hearing, Plaintiff testified that he understood English and spoke it in other settings but prefers to speak Spanish. [AR 48.] He testified that he worked in his last job at Waste Management for 18 years where he was promoted to supervisor at the landfill. [AR 49.] Plaintiff described his principal duty as checking the machines to make sure that they worked and

working as a dispatcher to direct the trucks via radio where to dump the garbage. [AR 50-51.] When other employees took time off, Plaintiff would step in as a machine operator loading the trucks. [AR 52.]

Plaintiff stated that on December 7, 2010, he hurt his back a hole while working in a hole and mixing cement. [AR 53.] In 2011, he went through surgery and afterward could no longer work. [AR 53.] He testified that his back burns a lot, his leg hurts and that he cannot stand or sit for very long. [AR 53.] He has received ten injections which did not help. [AR 55.] Plaintiff stated that a surgeon told him he could not undergo any further surgery and he was given pills that have helped for his arthritis. [AR 55.]

Plaintiff testified that he takes his dog to the park three times a week. [AR 55.] He lives with his wife and is unable to help with the chores. [AR 55.] Plaintiff stated that he is unable to put his socks on when it is very cold and experiences more pain during cold weather . [AR 57.] He takes walks, sometimes as long as thirty minutes, and goes out to eat with his kids and wife. [AR 57.]

### 3. The ALJ's Decision

The ALJ provided three reasons for discounting Plaintiff's subjective symptom testimony: (1) there was a lack of objective medical evidence in support; (2) the testimony was inconsistent with testimony of daily activities; and (3) the testimony of the efficacy of the injections was inconsistent with the record. [AR 32-33.]

The ALJ reviewed the record and found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are "not fully supported" for the reasons stated above. [AR 32.]

### 4. Analysis

The ALJ did not find that Plaintiff had engaged in any degree of malingering – as evidenced by the ALJ's statement to the effect that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." [AR 32.] Therefore, the ALJ was obliged to provide at least one "specific, clear, and convincing'" reason supported by substantial evidence for rejecting Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms. *Trevizo,* 871 F.3d at 678.

### a. Objective Medical Evidence

While inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony, inconsistencies are factors that the ALJ may consider when evaluating subjective symptom testimony. *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see* Soc. Sec. Ruling ("SSR") 16-3p, at *5, 2017 WL 5180304 (March 2016) ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").

Here, the ALJ summarized Plaintiff's testimony including his back injury and right knee problems, inability to stand or sit for anything other than short periods of time, limitations on lifting and carrying no more than 10 pounds, and daily activities. [AR 31.] The ALJ then discussed the objective medical findings and treatment records in detail. [AR 31-32.] The ALJ noted that while Plaintiff described his back and leg pain as constant but varying in intensity and preventing him from lifting heavy things, bending over or walking fast, medical records revealed inconsistent pain ratings and contrary objective findings. [AR 32.] The ALJ cited to records where Plaintiff rated his

1  back pain as 6/10 and right leg as 4 to 5/10, and described both as constant.
2  [*Id.* (citing (AR 527, 537, 539, 541, 544, 546, 550, 552.]  Rather than indicating
3  severe pain, even if only intermittently, these ratings show that Plaintiff
4  reported moderate pain to his physicians.  These inconsistent statements of
5  pain are valid grounds to discredit testimony.  *See Arellano v. Colvin*, Case
6  No. 5:15-cv-00192-FFM, 2016 U.S. Dist. LEXIS 68854, at *11 (C.D. Cal. 2016)
7  (testimony of pain conflicted with prior pain rating reports to doctors).

8        Additionally, the ALJ acknowledged that the objective medical evidence
9  contained positive findings which would tend to support some of Plaintiff's
10 assertions, including decreased range of motion in Plaintiff's back and knee.
11 However, the ALJ also observed that many physical examination findings
12 contradicted statements of severe pain.  [AR 34.]  In particular, the ALJ cited
13 to findings that Plaintiff had grossly intact cranial nerves, only slightly
14 diminished sensation and muscle strength, normal thoracic and cervical
15 spine, and normal physical examination of shoulders, elbows, wrists, hands,
16 and hips.  [AR 477-79.]  That the examinations that did not reveal muscular
17 atrophy or other physical signs of inactivity is relevant evidence in assessing
18 credibility in light of Plaintiff's testimony.  *See Meanel v. Apfel*, 172 F.3d 1111,
19 1114 (9th Cir. 1999) (ALJ entitled to discount testimony of near total
20 inactivity where claimant "did not exhibit muscular atrophy or any other
21 physical signs of an inactive, totally incapacitated individual").  The ALJ also
22 cited to records which did not reveal acute distress and noted that Plaintiff
23 was well-developed and well-nourished [AR 418, 477, 503, 555], all
24 inconsistent with Plaintiff's testimony that he was largely inactive and
25 debilitated.  *See Noah v. Berryhill*, 732 F. App'x 520, 522 (9th Cir. 2018).

26       In sum, the ALJ did not assert that the medical record revealed no
27 physical limitations, but rather that there was evidence which did not support
28 the significant limitations claimed by Plaintiff.

### b. Daily Activities

The ALJ's second reason for discounting Plaintiff's subjective symptom testimony was due to inconsistencies with testimony related about his daily activities. The ALJ stated that while Plaintiff "testified he could not stand or sit for long periods, and had difficulty walking, he also noted that he would drive his wife to and from work and son to and from school, walk his dog to the park, and sometimes go out to eat with his children." [AR 33.] The ALJ also observed that despite the severity of pain alleged in his knee and back, Plaintiff stated he could climb about 20 stairs. [AR 32.]

Here, the ALJ reasonably found that Plaintiff's admitted activities suggest a greater functional ability than other testimony which suggested near total inactivity and alleged that Plaintiff must alternate from sitting and standing to laying down on his carpet due to the pain. *See Wennet v. Saul*, 777 F. App'x 875, 877 (9th Cir. 2019) (where statements of daily activity "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"). Plaintiff takes issue with the ALJ's lack of explanation regarding the immediate transferability of activities such as climbing stairs, walking a dog, or driving to a work setting. [JS 9.] However, it is clear from the decision that the ALJ found that each of these activities contradicted a limitation asserted by Plaintiff which, if true, would preclude work. As the ALJ found, walking a dog for up to 30 minutes would contradict statements about having difficulty walking or not being able to stand for long periods. This a reasonable conclusion and an example of an ordinary technique of credibility evaluation of statements regarding pain and daily limitations, which directly implicate Plaintiff's ability to work. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014); *see also Jack P. v. Saul*, 2021 WL 4295753, at *3 (C.D. Cal. 2021) (ALJ reasonably concluded that ability to take

9

a dog for a long walk conflicted with testimony that the plaintiff could only walk for short distances and provided a basis to discount the testimony).

### c.   **Efficacy of Injections**

The final reason the ALJ gave to discount Plaintiff's subjective symptom testimony was an inconsistency between Plaintiff's hearing testimony that the 10 injections he received did not help and medical records indicating otherwise.  [AR 33.]  In doing so, the ALJ cited to evidence in the record which reflected that Plaintiff stated the injections provided relief.  Specifically, the ALJ cited to a May 6, 2015 treatment record in which Plaintiff stated that the injection "gave temporary relief."  [AR 498.]  The ALJ also cited to a December 9, 2014 record in which Plaintiff responded to an injection of Toradol 60 mg with Marcaine 1 cc and Lidocaine 1 cc as by starting to have immediate relief.  [AR 509.]  Most significantly, the ALJ's cited to a January 6, 2015 record reflecting that Plaintiff stated that the Toradol injection helped and the physician described the injection as effective.  [AR 511.]

In response, Plaintiff draws an analogy to a leaking tire, describing the injections as being a temporary repair that eventually gives way to a flat tire, with the tire being the pain Plaintiff experiences.  [JS 18.]  That may be an appropriate analogy, but the issue before the Court is whether the ALJ reasonably found inconsistencies in Plaintiff's testimony and the record.  If so, then the ALJ was entitled to assess credibility by factoring in that discrepancy.  Here, Plaintiff may have continued to feel pain after the injections or the pain may have returned; the ALJ never stated otherwise.  However, Plaintiff stated that the injections "did not help" at the hearing when records show he had made statements indicating the opposite.  The ALJ employed an ordinary technique of credibility assessment in comparing the unambiguous statements.  *See Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir.

1989) (prior inconsistent statements about pain may be taken into account during credibility assessment).

Accordingly, the ALJ stated sufficient valid reasons to allow this Court to conclude that the ALJ discounted Plaintiff's subjective symptom testimony on permissible grounds.

### B. The ALJ properly considered Dr. Mays' opinion

#### 1. Relevant Law

In assessing a claimant's RFC, the ALJ is required to consider all limitations and restrictions imposed by all impairments, even those deemed not severe. *See* SSR 96-8p, 1996 WL 374184, at *5 (July 1996) (requiring ALJ's RFC assessment to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). The RFC reflects the most a claimant can do despite his limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). The ALJ assesses a claimant's RFC "based on all of the relevant medical and other evidence," including any statements provided by medical sources. 20 C.F.R. §§ 404.1513(a), 404.1545(a)(3), 404.1546(c). An ALJ's determination of a claimant's RFC must be affirmed if the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

An ALJ must consider all medical opinions of record. 20 C.F.R. § 404.1527(b).[4] Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2)

---

[4] Section 404.1527 applies because Plaintiff filed his application before March 27, 2017. For an application filed on or after March 27, 2017, 20 C.F.R. § 404.1520c would apply. The new regulations changed how the Social Security Administration considers medical opinions and prior administrative medical findings, eliminated the use of the term "treating source," and eliminated deference to treating source medical opinions. *See* 20 C.F.R. § 404.1520c(a); *see also* 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).

11

examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). A treating physician's opinion is generally given the most weight and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007); *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

    **2. Dr. Mays' opinion**

Archie R. Mays, M.D., treated Plaintiff at the Tri-City Health Group beginning December 2014. [AR 506.] In his Disability Impairment Questionnaire dated July 13, 2017, Dr. Mays diagnosed Plaintiff with right knee internal derangement, right knee medial meniscal tear, chronic lumbar

sprain/strain, herniated nucleus pulposus, failed back syndrome, and lumbar redispatch. [AR 554.] Dr. Mays opined that Plaintiff could sit for 1 to 2 hours, stand/walk for 1 to 2 hours, and occasionally lift and carry up to 10 pounds during an 8 hour workday. [AR 557-58.] He further opined that Plaintiff should not sit, stand, or walk continuously in a work setting, and would have to get up and move around approximately every 10 to 15 minutes for 20 to 30 minutes before sitting down again. [*Id*.] Dr. Mays opined that Plaintiff has no significant limitations in doing repetitive reaching, handling, fingering or lifting and would have minimal limitations grasping, turning and twisting objects, using fingers/hands for fine manipulations, and using arms for reaching (including overhead) in an 8 hour workday. [AR 558-59.] Finally, he opined that Plaintiff could not push, pull, kneel, bend, stoop or remain in a stable and constant position more than a few minutes at a time. [AR 560-61.]

### 3. The ALJ assigned little weight to Dr. Mays' opinion

The ALJ assigned little weight to the opinion of Dr. Mays. [AR 33.] The ALJ observed that Dr. Mays' findings were internally inconsistent and contradicted by his own treatment records. [*Id*.] Specifically, the ALJ noted that Dr. Mays' own documentation of pain complaints and functional abilities revealed a less severe assessment than his opinion reflected in the Disability Impairment Questionnaire. [AR 34.] Finally, the ALJ cited a lack of comparable objective findings in finding that the objective medical record did not support Dr. Mays' opinion and concluding that the opinion warranted little weight.

### 4. Analysis

While the ALJ credited Dr. Mays' general physical exam in July 2017 as consistent with his diagnoses on the questionnaire, she observed that the findings of Plaintiff's functional abilities were internally inconsistent. [AR

13

34.]  In assigning little weight to Dr. Mays' opinion, the ALJ pointed to an inconsistency regarding the doctor's assessment of Plaintiff's ability to lift. The ALJ noted that in one portion of the report Dr. Mays indicated that Plaintiff could only occasionally lift up to 10 pounds.  However, in the next section, the doctor assessed that Plaintiff had no significant limitations for repetitive lifting and only minimal limitations in using upper extremities, bilaterally.  [*Id.*; *see* AR 558-59 ¶¶ 12-13.]

Additionally, the ALJ also found that the doctor's July 2017 estimates regarding the severity of Plaintiff's pain (8-9/10) were inconsistent with his own treatment notes which had routinely documented the reported pain level as 6/10 (back pain) and 4-5/10 (right leg pain).  [AR 33-34 (citing 527, 537, 539, 541, 546, 550, 552, 563).]  Notably, Dr. Mays indicated that Plaintiff reported to him that the back pain was a constant 6/10 and the right knee pain was a constant 5/10 in a report completed only two months prior to the July 2017 questionnaire.  [AR 552.]  In an August 2018 report also cited by the ALJ, Dr. Mays indicated again that Plaintiff reported 6/10 constant back pain and 5/10 constant right knee pain.  [AR 564.]   The inconsistency in the pain level reports and the doctor's differing assessments about Plaintiff's limitations for lifting within the same questionnaire were proper bases upon which the ALJ discounted Dr. Mays' opinion. *Matrunich v. Comm'r of SSA*, 478 F. App'x 370, 371 (9th Cir. 2021) (ALJ did not err in discounting opinion where reporting was internally inconsistent); *see also Khan v. Colvin*, 2014 WL 285173, at *7 (C.D. Cal. 2014) (no error in finding that inconsistency between two portions of the same report was reason to discount treating physician's opinion).

Citations to Dr. Mays' treatment notes also reveal complaints and observations of decreased sensation of the right big toe and decreased range of motion with pain.  [AR 531, 533, 537, 539, 544, 546.]  Yet, these notations do

not support Dr. Mays' July 2017 physical examination which noted substantial sensory and motor deficits, including gross reduction of sensation to his back and neck, moderate to severe tenderness in his knee, and significant reduction in range of motion to his back and knee. [AR 555.] The inconsistencies between the July 2017 examination and Dr. Mays' own treatment notes were a valid reason to discount his opinion and further support the ALJ's finding that the doctor's records were inconsistent with his July 2017 opinion. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (inconsistencies between doctor's notes and later opinion provide reason to not fully credit treating physician's opinion).

The other reason the ALJ gave for assigning little weight to Dr. Mays' opinion was that there was a lack of comparable objective findings. [AR 34] However, the ALJ failed to elaborate on this reasoning and indicate what portions of the overall record, aside from Dr. Mays' own notes, specifically conflicted with the doctor's opinion.[5]

Accordingly, while the ALJ did not properly discount Dr. Mays' opinion based on a comparison with the overall medical record, the internal inconsistencies of Dr. Mays' own findings provide a clear and convincing reason to affirm the ALJ's decision on this ground.

---

[5] The Commissioner points to portions of the records that could support the ALJ's reasoning [JS 23], but this post hoc argument is not sufficient. *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking").

## V.  CONCLUSION

For the reasons stated above, the ALJ's decision is AFFIRMED.

IT IS SO ORDERED.

Dated: March 2, 2022

*Patricia Donahue*
_____
PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE

NOTICE: THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.